CHAPMAN (UNITED STATES v.). See Cases Nos. 14,783–14,785.

CHAPMAN (WELLS v.). See Case No. 17,-391.

CHAPMAN (YOUNG v.). See Case No. 18,-154.

## Case No. 2,611.
### CHAPON v. SMYTHE.
[11 Blatchf. 120.] [1]

Circuit Court, S. D. New York. April 25, 1873.

CUSTOMS DUTIES—"RIBBONS."

In construing the eighth section of the act of June 30, 1864 (13 Stat. 210), which imposes a duty of sixty per centum ad valorem on "all dress and piece silks, ribbons, and silk velvets, or velvets of which silk is the component material of chief value," that clause must be construed in the same manner as if the word "ribbons" read "silk ribbons."

At law. This was a suit [by Jules Chapon] against [Henry A. Smythe] the collector of the port of New York, to recover back duties paid under protest.

Sidney Webster, for plaintiff.

Henry E. Tremain, Asst. Dist. Atty., for defendant.

After the close of the evidence, SMALLEY, District Judge, said:

This is an action of assumpsit, to recover back duties alleged to have been illegally exacted by the defendant, as collector of the port of New York, on various importations of ribbons made by the plaintiff. The controversy is, as to whether the goods should have paid a duty of sixty per centum, or fifty per centum, ad valorem. The defendant claims that the law imposed the duty of sixty per centum, which he levied. The plaintiff claims that the law imposed only fifty per centum. The most important question in the case is one purely of law. There is only one question of fact for the jury to pass upon.

The eighth section of the act of June 30, 1864 (13 Stat. 210), provides, that, on and after the 1st of July, 1864, a duty of sixty per centum ad valorem shall be imposed on "all dress and piece silks, ribbons, and silk velvets, or velvets of which silk is the component material of chief value." It is claimed

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

by the defendant, that the word "ribbons," as so used, means all ribbons, no matter of what material manufactured, whether of silk, or of silk and cotton, or entirely of cotton. The word "ribbon" was first introduced into tariff acts in the sixteenth section of the act of March 2, 1861 (12 Stat. 186), which enumerates, among silk goods, "silk ribbons." The same expression, with the same context, is renewed in the second section of the subsequent act of August 5, 1861, (12 Stat. 293). In the act of June 30, 1864, fabrics made of different materials are classified in different sections. Thus, the sixth section of that act, which is a cotton section, contains an enumeration of various manufactures of cotton, the general duty imposed thereon being thirty-five per centum ad valorem. The seventh section of that act provides for linen goods; and the eighth section, which relates to the question before us, is a silk section.

It is conceded, in this case, by both parties, that there are three kinds of ribbons made, of one or both of two different materials. There are many fancy names given to such ribbons, but these are of no consequence here. There are ribbons made entirely of silk; others made of silk and cotton; and others made entirely of cotton. If the language of the statute is clear and unambiguous, it must, unquestionably, govern. If, however, the language in which the intention of congress is expressed is capable of two constructions, we must look at previous legislation, together with that of the same session of congress in relation to other articles. It is alleged, on the part of the defendant, that the word "ribbons," as used in the clause of the eighth section of the act of 1864 which is under consideration, means every description of ribbons. But, it must be borne in mind that the eighth section is a silk section, in which silk is the material, and the only material, specifically named. The defendant contends, however, that the word "ribbons" includes every description of ribbons, no matter of what material made, and that cotton ribbons would be included, at a duty of sixty per centum ad valorem. But, can it be supposed that congress intended to make cotton ribbons pay more than any other description of cotton goods? Other cotton fabrics pay thirty-five per centum. The court will not give to the clause such an interpretation, unless the language is clear and explicit. Is the language thus clear and explicit, or is it fairly capable of two constructions? My own conviction is, that the clause should be read as though the word "silk" was inserted before the word "ribbons," as it is before "velvets." I am by no means clear that this is not the only grammatical construction. But if it be not, the clause is fairly susceptible of this construction, if we consider the evident purpose of congress to make cotton goods pay one rate of duty, linen goods another rate, and silk goods another, and a still higher, rate.

It may be said, that the words, "or velvets of which silk is the component material of chief value," includes velvets of silk and cotton. That is true, but the inclusion is by express terms. If, therefore, congress intended to include ribbons "of which silk is the component material of chief value," as well as velvets, the words, "or ribbons," would have been inserted after the words, "or velvets." The omission to do so indicates, I think, that congress did not intend to include ribbons, as "velvets of which silk is the component material of chief value."

I decide, therefore, for the purpose of this trial, that it was the intention of congress that only silk ribbons should pay a duty of sixty per centum, and that silk and cotton ribbons, with silk as the component material of chief value, should pay a duty of only fifty per centum, and that cotton ribbons should pay a duty of thirty-five per centum. Such a construction harmonizes all the sections of the act of 1864, which the construction contended for by the defendant does not, because, if the word "ribbons" includes every description of ribbons, it necessarily embraces cotton ribbons.

Much evidence has been offered, as to what article is known or called a ribbon. But, it is agreed, on both sides, that the fabrics in controversy were known to trade and commerce as ribbons; and, therefore, the word must apply to them. It is urged, that the construction which I have announced is in conflict with the opinion of the learned judges who decided the case of Lane v. Russell [Case No. 8,053]. Perhaps it is, but I think not necessarily so. In that case, there was an "agreed statement of facts;" and it does not appear that anything was said about cotton ribbons. It does not appear that the existence of such an article, in trade and commerce, as ribbons composed wholly of cotton, was made known to the court. No reference is made to such an article, either in the agreed statement or in the opinion of the court. If it had appeared to the learned judges that there were cotton ribbons, as well as silk ribbons, and silk and cotton ribbons, I am inclined to think they would have come to a different conclusion. But, whether they would or not, their decision is not necessarily binding upon this court. This court decides the law as it understands it; and so does the circuit court for Massachusetts. If either is wrong, there is a higher tribunal, a common superior, to correct either that court or this.

I am the more confirmed, however, in my conclusion, for another reason. The subject has attracted the attention of the secretary of the treasury, and he has examined it, and called upon his law advisers for their opinion. The solicitor of the treasury is the special law adviser of the treasury department, and one of the highest law officers of the government. He appears to have come to

the same conclusion as the one I now announce, to wit, that the section should be read as though the word "silk" were inserted before the word "ribbons." Not satisfied, however, with this opinion of the solicitor, the secretary applied to the attorney general, the highest law officer of the government. He gave the subject a careful examination, and, in an elaborate and well considered opinion, came to the same conclusion, to wit, that the clause should be read as if the word "silk" were written before the word "ribbons." In respect to every description of ribbons but velvet ribbons, duties are now levied, as I understand, in compliance with the construction thus given to this statute by the attorney general.

Therefore, the only question for the jury is this—How were the ribbons in question known in commerce in 1864, and when they were imported, which was in 1867? Were they known in the trade as silk goods or as silk and cotton goods? If they were known in the trade as silk ribbons, although they were not in point of fact made wholly of silk, they were liable to a duty of sixty per centum. It is conceded that these ribbons are not manufactured entirely of silk, but are made of silk and cotton, with silk as the component material of chief value. The evidence being that the ribbons were manufactured of silk and cotton, it is for the defendant to show, to the satisfaction of the jury, that they were known, and bought and sold in trade, in 1864, and at the date of their importation, as "silk ribbons." If the jury shall find that they were so known and bought and sold, at those dates, they will find a verdict for the defendant. If, on the contrary, the jury shall find, that, upon the evidence, the ribbons in controversy were not known in trade and commerce as silk ribbons, they will find a verdict for the plaintiff. These are the general propositions of law which will be given to the jury for their guidance, and I announce them in advance of the arguments to the jury, in order that the counsel may know to what questions of fact the testimony is to be applied, and what facts the jury will be directed to pass upon.

The jury found a verdict for the plaintiff.